**Entered on Docket**
**March 20, 2013**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED
MAR 2 0 2013
United States Bankruptcy Court
San Jose, California

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>DERALD KENOYER,<br><br>Debtor. | Case No. 11-53472-ASW<br><br>Chapter 7 |
| DERALD KENOYER,<br><br>Plaintiff,<br><br>vs.<br><br>NORFEN CARDINALE, MARTHA L. CARON, AND MARY MARGARET BUSH,<br><br>Defendants. | Adv. Proc. No. 11-05130 |

**DECISION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Noreen Cardinale, Martha Caron, and Margaret Bush (collectively referred to as "Defendants") have moved for summary judgment, or in the alternative summary adjudication, on Plaintiff Derald Kenoyer's claims against Defendants relating to Defendants' alleged violation of the automatic stay. Attorney Stephen Finestone represents Defendants, and attorneys Kathryn Diemer and

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Judith Whitman[1] represent Mr. Kenoyer. Mr. Kenoyer filed a late Opposition, which Mr. Kenoyer wrote himself. After a telephonic conference with Mr. Finestone and Ms. Diemer, the Court extended the briefing schedule, and Ms. Diemer filed an Opposition on behalf of Mr. Kenoyer. Defendants replied to the second Opposition. Having considered the parties' written arguments, evidence, and statements made at the hearing on December 13, 2012, and for the reasons explained below, the Defendants' Motion for Summary Judgment is granted.

## I. Standard of Review

A court shall grant summary judgment if the pleadings and any filed affidavits, discovery responses and deposition testimony show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Bankr. P. 7065 (incorporating Fed. R. Civ. P. 56); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 584-85 (1986). Material facts are those that may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable factfinder to return a verdict for the non-moving party. Id. at 248.

When determining whether such a factual dispute exists, the Court may not weigh the evidence or make credibility determinations. Id. at 255; see also Bravo v. City of Santa Maria,

[1] Ms. Whitman remains Mr. Kenoyer's counsel of record, although a declaration executed by Ms. Whitman on January 22, 2013, states that Ms. Whitman has retired.

665 F.3d 1076, 1083 (9th Cir. 2011). Instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." Anderson, 477 U.S. at 255 (citing to Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-159 (1970)). If a genuine dispute as to a material fact exists, then summary judgment must be denied. Id. at 249-50. However, if the non-moving party carries the burden of proof and fails to make a sufficient showing to establish an element which is essential to that party's case, then summary judgment must be entered. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## II. Issues Presented

In this proceeding, Mr. Kenoyer contends that Defendants violated the automatic stay, 11 U.S.C. §§ 362(a)(1) and (6), which went into effect on April 13, 2011, when Mr. Kenoyer filed for bankruptcy. Within the two main issues -- whether §§ 362(a)(1) or (6) have been violated -- the Court has identified the following specific issues:

(1) Did it violate the automatic stay for Ms. Cardinale, as the state court plaintiff, and for Ms. Cardinale's attorneys to make a post-petition attempt to enforce a pre-petition trial subpoena that was served on Mr. Kenoyer, the bankruptcy debtor?

(2) Does it make any difference that Mr. Kenoyer was severed from the state court litigation shortly after the filing of Mr. Kenoyer's bankruptcy petition?

(3) Does it make any difference that Mr. Kenoyer never testified or produced documents in response to the

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

subpoena?

(4) Does the breadth of the subpoena matter? In other words, does it make a difference whether the subpoena was narrowly directed to the claims against non-debtor co-defendants, or whether the subpoena was more broadly directed at claims against Mr. Kenoyer?

(5) Was it Defendants' obligation to seek relief from the automatic stay before seeking to enforce the subpoena, or was it instead incumbent on Mr. Kenoyer to seek injunctive relief under 11 U.S.C. § 105(a) to prevent enforcement of the subpoena?

(6) Did it violate the automatic stay, 11 U.S.C. 362(a)(6), when Mr. Kenoyer's alleged involvement in the tortious conduct was discussed at the state court trial of the claims asserted against the non-debtor co-defendants?

As to these issues, both sides have produced substantially the same evidence, and neither party has raised a factual dispute. Instead, the dispute between the parties is whether the Defendants are entitled to judgment as a matter of law under this set of undisputed material facts, which are detailed below.

The issues before the Court are purely legal. See Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210, 1213 (9th Cir. 2002) ("Whether the automatic stay provisions of 11 U.S.C. § 362(a) have been violated is a question of law."). Significantly, the issues are also novel. Although several courts, including the Ninth Circuit Bankruptcy Appellate Panel, have addressed similar issues within the context of discovery, this Court has found no binding or persuasive legal precedent which squarely addresses the issues,

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

particularly with respect to a trial subpoena.

**III. Statement of Undisputed Material Facts**

In support of the motion and the contention that there was no violation of the automatic stay nor any resulting damages, Defendants have offered the declaration of Ms. Caron with supporting attachments. In opposition to the motion, Mr. Kenoyer has offered the declaration of Ms. Diemer with supporting attachments. These declarations, their attachments, and the Court's own docket together demonstrate the following material facts, which neither side has disputed. The exhibits attached to Ms. Diemer's declaration were lettered and will be referred to herein as Ex. A, Ex. B, etc. The exhibits attached to Ms. Caron's declaration were numbered and will be referred to herein as Ex. 1, Ex. 2, etc.

Ms. Caron and Ms. Bush were Ms. Cardinale's attorneys in a state court case pending against Mr. Kenoyer and several others in Contra Costa County in which Ms. Cardinale alleged a conspiracy to commit fraudulent transfers. Caron Decl. at ¶¶ 1, 12, 22. The other state court defendants were Daniel R. Miller, Sr., Keith Charles Knapp, Home Loan Services Corporation dba California Home Loans, Daniel R. Miller, Jr., and Patrice Miller. The state court case was set for trial to commence on April 18, 2011. Caron Decl. at ¶ 4; Diemer Decl. at ¶ 6.

Before trial in the state court, and approximately three weeks before Mr. Kenoyer filed for bankruptcy, Ms. Cardinale's attorneys issued a subpoena (hereafter, "the Subpoena") on March 23, 2011, which was served on Mr. Kenoyer on March 30, 2011. Caron Decl. at

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

¶¶ 4-5; Diemer Decl. at ¶ 2. The Subpoena required Mr. Kenoyer to appear at trial on April 18, 2011, and to produce records. Caron Decl. at ¶ 4; Ex. A & Ex. 2 "Civil Subpoena"; Ex. 3 "Proof of Service." According to the Subpoena, "The witness has exclusive custody of the original of documents which will be offered as evidence in the trial of this matter, **and is a party defendant** who acted as loan agent for many of the loans which are the subject of this action." (Emphasis added).

The Subpoena sought numerous records. The Subpoena was aimed, specifically, at all writings concerning Mr. Kenoyer's affiliation with co-defendants in the state court action, as well as writings pertaining to numerous entities, such as Napa Valley, Inc., Pashlin, Inc., PFG, Inc. and others. The Subpoena also sought records pertaining to 23 separate pieces of real property. The Subpoena sought information relating to Daniel R. Miller, Jr.,[2] to Patrice Miller,[3] and to Daniel R. Miller, Sr.[4] However, the Subpoena also sought information concerning Mr. Kenoyer: Mr. Kenoyer's agreements and investments with Daniel R. Miller, Jr., and other non-defendants; Mr. Kenoyer's commissions and fees; Mr. Kenoyer's affiliation and agreements with California Home Loans or Keith Charles Knapp; the recordation of two deeds of trust in Mr. Kenoyer's favor; money loaned or advanced by Mr. Kenoyer to the co-defendants; written communications between Mr. Kenoyer and Daniel

---

[2] Subpoena Attachment at ¶¶ 1, 4, 5, 6, 10, 12, 13, 14, 15, 19, 20, 21, 22, 25, 26, 27, 28, 29, 30, 31, and 33.

[3] Subpoena Attachment at ¶¶ 1, 8, 10, 12, 14, 19, 20, 25, 26, and 31.

[4] Subpoena Attachment at ¶¶ 1, 7, 10, 12, 14, 19, 20, 25. 26, 28, and 31.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Miller, Jr.; and Mr. Kenoyer's net worth. Subpoena Attachment at ¶¶ 13-24 and 35.

On April 11, 2011, Ms. Caron received a telephone call from Mr. Kenoyer's attorney, Ms. Whitman, advising of Mr. Kenoyer's intention to file a bankruptcy petition. Caron Decl. at ¶ 6. According to Ms. Caron, Ms. Whitman at that time demanded that the state court claims against Mr. Kenoyer be dismissed, with prejudice. Id. Ms. Caron agreed to sever the claims against Mr. Kenoyer, but not to dismiss the claims. Id. Ms. Caron also stated that Ms. Whitman acknowledged that Mr. Kenoyer would still be required to testify, but that Ms. Caron agreed to relieve Mr. Kenoyer to "standby status on Monday, April 18[.]" Id.

On April 12, 2011, Ms. Caron flew to California for purposes of trying the state court case. Id. at ¶ 7. The very next day, April 13, 2011, at 3:16 p.m., Mr. Kenoyer filed a petition with the bankruptcy court under chapter 7, initiating this bankruptcy case. On April 14, 2011, the Notice of Stay of Proceedings, dated April 13, 2011, was served on Ms. Caron and Ms. Bush. Diemer Decl.; Ex. B & Ex. 5 "Notice of Stay of Proceedings" and "Certificate of Service"; Caron Decl. at ¶ 8.

On April 15, 2011, Ms. Caron received a letter (hereafter, "the April 15 Letter") from Mr. Kenoyer's attorney, Ms. Diemer, stating that Ms. Cardinale should cease requesting Mr. Kenoyer's testimony because of the pending bankruptcy case. Diemer Decl., Ex. C "April 15 Letter"; Caron Decl. at ¶ 9. The April 15 Letter explained that any attempt to enforce the Subpoena would, in Ms. Diemer's opinion, violate the automatic stay under 11 U.S.C. § 362(a)(1), which prohibits the continuation of the state court

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Case: 11-05130 Doc# 60 Filed: 03/20/13 Entered: 03/20/13 15:47:19 Page 7 of 41

action against Mr. Kenoyer. The April 15 Letter further sought confirmation that Ms. Cardinale did not "intend to make any efforts to seek damages from Mr. Kenoyer, or Mr. Kenoyer's attendance," at the state court trial. In closing, the April 15 Letter stated that if Mr. Kenoyer's counsel was required to appear at the state court trial, then Mr. Kenoyer would seek all available remedies under the law for costs or harm to Mr. Kenoyer.

On April 16, 2011, and in response to the April 15 Letter, Ms. Caron sent a letter (hereafter, "the April 16 Letter") to Ms. Diemer stating that Ms. Cardinale was no longer proceeding against Mr. Kenoyer, and that a motion to sever Mr. Kenoyer was "now pending."[5] The April 16 Letter memorialized a conversation between Ms. Caron and Ms. Whitman in which Ms. Whitman allegedly acknowledged that Mr. Kenoyer was still obligated to appear as a witness, and in which Ms. Whitman and Ms. Caron agreed that Mr. Kenoyer could be on standby status on April 18. The April 16 Letter then stated that, based upon the threatening tone of the April 15 Letter, "our gracious agreement to allow Mr. Kenoyer to avoid appearing on April 18 is hereby revoked."

The April 16 Letter then analyzed the impact of the filing of Mr. Kenoyer's bankruptcy petition on the enforceability of the Subpoena. First, the April 16 Letter discussed the general prohibition in 11 U.S.C. § 362 against the continuation of an action against a debtor. The April 16 Letter then discussed the Ninth Circuit Bankruptcy Appellate Panel's decision in Groner v.

---

[5] The assertion that the motion was "now pending" on April 16, 2011, appears to have been incorrect. The motion to sever filed in the state court case was signed by counsel on April 18, 2011. Ex. 6 "Motion to Sever."

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Case: 11-05130 Doc# 60 Filed: 03/20/13 Entered: 03/20/13 15:47:19 Page 8 of 41

Miller (In re Miller), 262 B.R. 499 (B.A.P. 9th Cir. 2001). The April 16 Letter opined that based upon Miller, § 362 did not prohibit Mr. Kenoyer from testifying at the state court trial against the co-defendants once the claims against Mr. Kenoyer were severed. The April 16 Letter continued: "[t]he [Miller] court noted that if the discovery had any utility other than to facilitate recovery against the debtor, it was permitted, even where that information could eventually adversely affect the debtor." Caron Decl. at ¶ 10, Ex. 4 "April 16 Letter." The April 16 Letter then stated: "Plaintiff is clearly not proceeding against Mr. Kenoyer any longer. However, he is an indispensable witness as to the remaining three defendants and I expect to see him Monday."

On April 18, 2011, the state court trial proceedings commenced, although jury selection did not begin until April 26, 2011, and the first witness was not called until April 27, 2011. Diemer Decl. at ¶ 6; Caron Decl. at ¶¶ 11 and 25. On April 18, 2011, Ms. Cardinale immediately moved to sever Mr. Kenoyer from the state court trial.[6] Caron Decl. at ¶ 12, Ex. 6 "Motion to Sever"; Diemer Decl. at ¶ 5. Also on April 18th, Ms. Caron argued to the state court judge that under Miller, Mr. Kenoyer could be compelled to testify once he was severed from the litigation and no longer a party. Diemer Decl.; Ex. D "Reporter's Transcript, Cardinale v. Miller, et al., April 18, 2011." Ms. Caron stated: "We are not proceeding against Mr. Kenoyer in any way. We are actually asking that he be severed from this. However, it is a conspiracy case. He is an important witness. He has been served with a subpoena to

---

[6] Ms. Cardinale also moved to sever another defendant, Patrice Miller, who had also filed for bankruptcy. Caron Decl. at ¶ 12.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

testify." Id. By contrast, Ms. Diemer argued that compelling Mr. Kenoyer to testify would be a violation of the stay, because Ms. Diemer believed that Ms. Caron would attempt to elicit testimony from Mr. Kenoyer about the claims against Mr. Kenoyer which could later be used against Mr. Kenoyer. Id. Another attorney at the hearing, Charles Bronitsky -- who represented Keith Charles Knapp and Home Loan Services Corporation -- suggested that the parties go to the bankruptcy court to ask for clarification as to the scope of the stay. Id.[7]

On April 19, 2011, the state court entered an order granting the motion to sever. Ex. 8 "Order Granting Motion to Sever and Enforcing Subpoena." The state court ordered "Mr. Kenoyer who is under trial subpoena to appear and testify as a witness . . . to comply with that subpoena absent further notice from the bankruptcy court." Id.; Caron Decl. at ¶ 13; Diemer Decl. at ¶ 9. Also on April 19, 2011, Mr. Kenoyer filed an ex parte motion to show cause in Mr. Kenoyer's bankruptcy case for the purpose of determining whether Mr. Kenoyer could be compelled to testify in the state court case. See Case No. 11-53472, Docket #7.

---

[7] From the record, it is not clear whether the parties discussed who would seek relief from the bankruptcy court, or what type of relief would be sought. The opposition brief filed by Ms. Diemer on behalf of Mr. Kenoyer states that it was the state court judge, Judge Judith Craddick, who "required direction from the bankruptcy court," and that "Ms. Caron refused to file a motion for relief from stay[.]" The opposition brief then states that it was Judge Craddick who "put the obligation on the debtor to confirm that the motion to stay still included Mr. Kenoyer as a witness." This reference to a "motion to stay" is unclear. No such motion was filed in the main bankruptcy case or in this adversary proceeding. As discussed infra, Mr. Kenoyer did file other motions with this Court after Judge Craddick purportedly placed the burden of taking action on Mr. Kenoyer.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

On April 20, 2011, Mr. Kenoyer commenced the instant adversary proceeding against the Defendants and filed an ex parte motion for a temporary restraining order. Also on April 20, 2011, a hearing was held on the ex parte motion. At the hearing, this Court explained that "Ms. Diemer first filed a motion claiming that the stay was violated and wanted an emergency hearing on a motion, and the Court, meaning I, declined to set a hearing on the motion on shortened time like this and so the instruction went back that if Ms. Diemer wanted a hearing, she better file an adversary [proceeding], which she has done. So this is an adversary proceeding requesting injunctive relief." Diemer Decl. at ¶ 10, Ex. E "Transcript of Proceedings, Hearing Re: Complaint for TRO, April 20, 2011." The Court also expressed concerns about the applicability of the stay to the pre-petition Subpoena. The Court explained that the Court had not had an opportunity to research the issue fully, and the Court was uncertain about the effect of the Miller decision relied upon by Ms. Cardinale, partly because the Miller case involved a discovery subpoena. Diemer Decl. at ¶ 11, Ex. E "Transcript of Proceedings, Hearing Re: Complaint for TRO, April 20, 2011."[8]

At the April 20, 2011 hearing, it became unnecessary for this Court to rule on the application for a temporary restraining order, because Ms. Cardinale stipulated, through Ms. Caron, not to call Mr. Kenoyer to testify until further order of this Court. Caron

---

[8] At the subsequent December 13, 2012 hearing, the Court asked if there was a practical difference between a deposition subpoena and a trial subpoena, and Ms. Diemer conceded that she did not know if there was a practical difference between the two, but that Miller could be distinguished on the risk to the debtor. Audio Recording of December 13, 2012 hearing at 4:57 p.m.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Decl. at ¶ 14. Ms. Cardinale, through her attorney Ms. Caron, also agreed to provide Mr. Kenoyer with "use immunity for any subsequent adverse proceedings as to any testimony at the state court trial he might provide."[9] Ex. E "Transcript of Proceedings, Hearing Re: Complaint for TRO, April 20, 2011"; Caron Decl. at 14. The Court continued the hearing on Mr. Kenoyer's motion for a restraining order to April 29, 2011. At the April 29, 2011 hearing, the Court again continued the hearing to May 6, 2011. Before the hearing could be held, the state court trial concluded on May 4, 2011, and the case was submitted to the jury. Caron Decl. at ¶ 19. The jury returned a verdict on May 6, 2011, and the hearing scheduled to take place in this Court on May 6 was never held. Thus, this Court entered no order on the motion for a temporary restraining order.

Ms. Cardinale elected to proceed in the state court trial without Mr. Kenoyer's testimony. Caron Decl. at ¶ 15. In addition, Ms. Cardinale did not present Mr. Kenoyer's pre-petition deposition testimony at trial. Caron Decl. at ¶ 16. Instead, at trial, Ms. Caron sought and received documents from one of the co-defendants, California Home Loans ("CHL"). Diemer Decl. at ¶¶ 14-

---

[9] Strictly speaking, "use immunity" pertains to criminal prosecutions and is defined as "[i]mmunity from the use of the compelled testimony (or any information derived from that testimony) in a future prosecution against the witness. After granting use immunity, the government can still prosecute if it shows that its evidence comes from a legitimate independent source." Black's Law Dictionary (9th ed. 2009). Although Ms. Caron did not explain what she meant by "use immunity," the transcript from the state court hearing shows that Ms. Caron agreed that Ms. Cardinale was "willing that if [Mr. Kenoyer] testifies, not to use anything [Mr. Kenoyer] says against [Mr. Kenoyer or Mr. Kenoyer's estate] in any forum[.]" Because Mr. Kenoyer did not testify, there is no testimony which would fall under any grant of "use immunity."

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

15, Ex. F "Reporter's Transcript, Cardinale v. Miller, et al.: April 19, 2011, April 28, 2011." These documents related to a trust account that CHL maintained but which contained Mr. Kenoyer's funds, which Mr. Kenoyer allegedly used to make advances to cover defaults by Mr. Miller. Id. Ms. Caron also asked one of the state court defendants, Mr. Knapp, about this account and about Mr. Knapp's knowledge that Mr. Kenoyer was using the funds to cover missed payments on loans made by Mr. Knapp to Mr. Miller. Id. The Court cannot divine what Ms. Caron's intent or strategy was in inquiring into these subject areas.[10]

The state court trial concluded with a judgment on May 10, 2011 in favor of Ms. Cardinale against Daniel R. Miller, Sr., Keith Charles Knapp, and Home Loan Services Corporation dba California Home Loans, in the amount of $2,170,593, as well as punitive damages totaling $900,000. Caron Decl. ¶ 21-22, Ex. 11 "Jury Verdict Form," Ex. 1 "Judgment on Special Verdict by Jury." The state court did not determine Mr. Kenoyer's liability, and the judgment does not impact his liability. Id.

After the jury rendered its verdict in the state court action, Defendants filed a motion in this adversary proceeding seeking dismissal of Mr. Kenoyer's Complaint. At a hearing held July 14,

---

[10] Ms. Caron may have inquired into Mr. Kenoyer's knowledge of the conspiracy in order to build the case against his former co-defendants, or perhaps to set the stage for future litigation against Mr. Kenoyer, or for both purposes; however, Ms. Diemer's Declaration only has one, out of context, page of a transcript of Ms. Caron discussing Mr. Kenoyer's knowledge of the conspiracy. Diemer Decl. at ¶ 17, Ex. G "Reporter's Transcript, Cardinale v. Miller, et al.: May 2, 2011." This limited information is insufficient to show anything other than the fact that Mr. Kenoyer was mentioned during the trial.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

2011, the Court dismissed the Complaint with leave to amend.[11] Mr. Kenoyer filed an Amended Complaint on October 14, 2011.

According to the Amended Complaint, Mr. Kenoyer commenced the adversary proceeding out of a concern that admissions, other unfavorable evidence, or determinations in the state court case would be used against Mr. Kenoyer in a non-dischargeability action. The first cause of action in the Amended Complaint seeks declaratory relief as to whether the automatic stay prevents Ms. Cardinale from calling Mr. Kenoyer to testify at the state trial, from requesting documents from Mr. Kenoyer, or from litigating Mr. Kenoyer's liability. The second cause of action seeks an injunction preventing Ms. Cardinale from engaging in the conduct described in the first cause of action. The third and final cause of action seeks damages for "costs, attorneys' fees, other expenses, and emotional distress, all according to proof."

**IV. Discussion**

The filing of a bankruptcy petition operates as a stay of "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced" before the bankruptcy case. 11 U.S.C. § 362(a)(1). Similarly, the filing of a bankruptcy petition stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement" of the bankruptcy case. 11 U.S.C. § 362(a)(6). Mr. Kenoyer alleges that Defendants violated both of

[11] The Complaint was dismissed because the parties agreed that the Complaint was improperly pled.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

these statutory provisions.

The automatic stay is one of the most fundamental aspects of the Bankruptcy Code and serves several purposes. A primary purpose of the automatic stay is to relieve a debtor of financial pressures such as those which drove the debtor into bankruptcy. See Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571 (9th Cir. 1992). Another purpose of the stay is to ensure "that all claims against the debtor will be brought in a single forum, the bankruptcy court." Hillis Motors, Inc. v. Hawaii Auto Dealers Ass'n, 997 F.2d 581, 585 (9th Cir. 1993). The stay is intended to give a debtor the opportunity to reorganize or repay debts, if at all possible. Boucher v. Shaw, 572 F.3d 1087, 1092 (9th Cir. 2009). Thus, when the automatic stay applies, the burden is on a creditor to request relief from the stay, typically under 11 U.S.C. § 362(d).[12]

The failure to request and obtain such relief, when required, can result in a willful violation of the stay. For a creditor's violation to be willful, the creditor must know of the automatic stay and intentionally act in a way which violates the stay. Morris v. Peralta (In re Peralta), 317 B.R. 381, 389 (B.A.P. 9th Cir. 2004). A creditor is not required to have specific intent to violate the stay in order for the creditor's actions to amount to a willful violation. Id. In addition, the creditor's good faith belief that the creditor's conduct did not violate the stay is not

---

[12] The burden to make a request is not identical to the burden of proof once a request is made. See 11 U.S.C. § 362(g) (discussing the creditor's initial burden of proof on the issue of equity in the property, and the debtor's burden of proof on all other issues).

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

relevant. Id. A creditor's mistaken belief that the creditor has the right to act can still be a willful violation of the stay. See United States v. Bulson (In re Bulson), 117 B.R. 537, 539 (B.A.P. 9th Cir. 1990).

At the heart of this case is the juxtaposition between a creditor's affirmative duty to seek relief from the automatic stay, and a debtor's right to seek an injunction when the automatic stay provides no protection. The Court must determine whether the automatic stay -- which arose upon the filing of Mr. Kenoyer's bankruptcy petition -- prohibited enforcement of the Subpoena by requiring Mr. Kenoyer to testify at trial or the presentation of any evidence concerning Mr. Kenoyer at the state court trial.

Mr. Kenoyer's Amended Complaint in this adversary proceeding is based on 11 U.S.C. § 362(k)(1), which provides, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." The burden of proving a violation of the automatic stay is on the debtor. See Dawson v. Washington Mut. Bank, F.A. (In re Dawson), 390 F.3d 1139, 1149 (9th Cir. 2004); Eskanos & Adler, P.C. v. Roman (In re Roman), 283 B.R. 1, 7-8 (B.A.P. 9th Cir. 2002). Thus, within the context of a motion for summary judgment, the burden of production also lies with the debtor. See Celotex Corp., 477 U.S. at 322-23.

**A. Alleged Violation of § 362(a)(1)**

The state court action -- in which Mr. Kenoyer was a defendant -- commenced before Mr. Kenoyer filed his bankruptcy petition.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Therefore, the first issue this Court must address is whether there was a continuation of the state court action against Mr. Kenoyer, "including the issuance or employment of process," after Mr. Kenoyer filed for bankruptcy, in violation of § 362(a)(1).

Mr. Kenoyer filed his bankruptcy petition on April 13, 2011, and the automatic stay went into effect at that time. Any continued prosecution of the claims asserted in the state court action against Mr. Kenoyer clearly would have violated the stay. In apparent recognition of this, counsel for Ms. Cardinale swiftly and promptly moved to sever Mr. Kenoyer from the state court action, ceasing the assertion of claims against Mr. Kenoyer. However, counsel for Ms. Cardinale continued to insist upon enforcement of the Subpoena, which had been served on Mr. Kenoyer prior to the bankruptcy filing. The question this Court must answer is whether continued enforcement of the Subpoena violated the stay. As to this issue, there is surprisingly little case law, and the Court has found nothing on all fours.

It is a serious concern that a debtor seeking a fresh start in bankruptcy would bear the burden and related costs of contesting the enforcement of a trial subpoena. Imposition of such a burden on a debtor is of crucial importance when such debtor was a severed party-defendant, when information obtained from the debtor might well be used to build a case against the debtor in a later trial, and when the circumstances show that a subsequent trial against the debtor is almost certain to occur. Such a debtor would in all likelihood need to hire and pay for counsel to provide representation and to defend the debtor's interests, i.e., to object to objectionable questions and to ensure that the main

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

purpose of the testimony is not to build a case against the debtor in the context of a case in which the debtor is not a party. This need to hire and pay for an attorney in one or more fora outside the Bankruptcy Court undermines the purposes of the automatic stay. One can easily envision circumstances in which a state court plaintiff pursues minor claims against minor defendants in order to garner evidence to be used against the main debtor-defendant in a post-bankruptcy trial, thereby thwarting the purposes behind the automatic stay.

However, as discussed below, there is much persuasive authority for the proposition that it does not violate the automatic stay to enforce a subpoena served on a debtor for purposes of obtaining discovery against non-debtor defendants. Such decisions are also supportive of a debtor's right to seek injunctive relief to prohibit enforcement of such subpoenas. Thus, on balance, most courts have opted to place the onus on the debtor to obtain injunctive relief rather than on the creditor to seek relief from the stay.

**The Miller Case**

The decision in Groner v. Miller (In re Miller), 262 B.R. 499 (B.A.P. 9th Cir. 2001), which is persuasive authority for this Court only, is instructive. The Bankruptcy Appellate Panel (the "BAP") concluded in Miller that the issuance of a deposition subpoena on a debtor, who had been a defendant in state court litigation but for whom the litigation was stayed, for the purpose of pursuing claims against a co-defendant, did not violate § 362(a)(1).

Factually, Miller is distinguishable from Mr. Kenoyer's case

because the Miller subpoena was a discovery subpoena, not a trial subpoena. The Miller subpoena was framed as a third-party witness subpoena and not as a party witness subpoena. By contrast, the Subpoena served on Mr. Kenoyer was a trial subpoena originally served on Mr. Kenoyer in his role as a defendant and party to the state court case.

This factual distinction, however, lacks legal significance. The Subpoena served on Mr. Kenoyer was issued under California law, and California law draws no distinction between trial and discovery subpoenas. California Code of Civil Procedure § 1985 defines a "subpoena" and a "subpoena duces tecum" as follows:

> (a) The process by which the attendance of a witness is required is the subpoena. It is a writ or order directed to a person and requiring the person's attendance at a particular time and place to testify as a witness. It may also require a witness to bring any books, documents, or other things under the witness's control which the witness is bound by law to produce in evidence. . . .
>
> (c) The clerk, or a judge, shall issue a subpoena or subpoena duces tecum signed and sealed but otherwise in blank to a party requesting it, who shall fill it in before service. An attorney at law who is the attorney of record in an action or proceeding, may sign and issue a subpoena to require attendance before the court in which the action or proceeding is pending or at the trial of an issue therein, or upon the taking of a deposition in an action or proceeding pending therein; the subpoena in such a case need not be sealed. An attorney at law who is the attorney of record in an action or proceeding, may sign and issue a subpoena duces tecum to require production of the matters or things described in the subpoena.

Cal. Civ. Proc. Code § 1985. Whether a subpoena requires a person to appear at a trial or a deposition, the essential purpose of the subpoena is to require the subpoenaed person "to testify as a

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

witness."[13] Therefore, this Court will treat a deposition subpoena and trial subpoena as being equivalent litigation tools.

The Miller decision bears some procedural similarities to the case at bar. In both Miller and in this case, the plaintiffs did not obtain relief from the automatic stay before serving the subpoena. Understandably, regarding the Subpoena served on Mr. Kenoyer, this was not possible; when the Subpoena was served, Mr. Kenoyer had not yet filed a bankruptcy petition, and there was no automatic stay.

The Miller case is also similar insofar as it involved the enforcement of a subpoena for purposes of pursuing claims against a non-debtor. In Miller, the plaintiff sued the debtor, and the debtor cross-complained against plaintiff and then filed a chapter 13 petition. Id. at 501. The state court action was stayed, and the plaintiff subsequently amended the complaint to add the debtor's husband, who had not filed for bankruptcy, as a defendant. Id. The debtor's first bankruptcy case was dismissed, but the debtor filed a second chapter 13 petition. Id. The plaintiff continued her case against the debtor's husband and served the debtor with a deposition subpoena because the debtor was a key witness with respect to the plaintiff's claims against the debtor's husband. Id.[14] The debtor did not comply with that subpoena or the

---

[13] The most noticable difference between giving trial and deposition testimony is that a judge presides over the trial testimony and can prevent the examination from eliciting testimony that would violate the stay. By contrast, at a deposition, an attorney can instruct a client not to answer a question which may violate the stay.

[14] Debtor's counsel incorrectly states in her opposition brief that the present case is factually different from Miller because (continued...)

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

next three that were served on her, and the plaintiff filed a motion to compel and for sanctions. Id. The debtor then dismissed her cross-complaint against the plaintiff, and the state court denied the motion to compel. Id. Subsequently, the debtor filed a motion for an order of contempt in the bankruptcy court, arguing that plaintiff's counsel violated the automatic stay by serving the subpoenas and filing the motion to compel. Id.

On appeal, the BAP in Miller considered whether issuance of the subpoenas -- which sought discovery pertaining only to claims against non-debtor co-defendants -- violated the automatic stay. Id. at 504. The BAP concluded that the subpoenas, themselves, were not a violation. Id. at 503, 507. Because § 362(a)(1) only applies to debtors, and the action against the debtor's husband was not stayed, the BAP determined that the plaintiff was free to pursue that action. Id. at 503-04. The BAP stated that it "believes that section 362(a) does not preclude generation of information regarding claims by or against a non-debtor party, even where that information could eventually adversely affect the Debtor." Id. at 505. The BAP found that:

> **to the extent that [the plaintiff] was eliciting Debtor's testimony for purposes other than to continue the prosecution of her claims against Debtor, the proposed discovery did not violate the automatic stay,** unless the issuance of subpoenas itself constitutes "issuance or employment of process" against Debtor or a "judicial proceeding" against Debtor. If this were true, a debtor could never be called as a

---

[14](...continued) Miller involved the taking of a deposition of a third party who was **not** the debtor. This is simply not true. It was the debtor who was subpoenaed in Miller: "[A]ppellant...personally served Debtor with a third-party subpoena to appear as a deposition witness." Id. at 501.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

> witness (even in actions where the debtor is not a party) without relief from the stay. Such an interpretation of section 362(a) defies common sense and the spirit of the Code. **Information is information, and we believe the discovery of it as part of the development of a case against non-debtor parties is permissible, even if that information could later be used against the party protected by the automatic stay.**

Id. (Emphasis added).

This language is ambiguous to some degree. Under one interpretation, the BAP may have meant that it is permissible for a plaintiff to elicit testimony from a debtor if the testimony would serve the purpose of building a case against a non-debtor, only. After all, the Miller case factually involved a request for discovery which pertained "only" to the claims against non-debtors. Id. at 504. However, the more plausible interpretation is that it is permissible for a plaintiff to elicit testimony from a debtor which not only is relevant to claims asserted against a non-debtor, but also may be damaging to the debtor in a subsequent proceeding, as long as one purpose -- out of perhaps many -- of eliciting the testimony is to build a case against a non-debtor. This latter interpretation appears to be what the BAP contemplated in its remarks about "information" being "information" which could later be used against a debtor. A key problem in Mr. Kenoyer's case, and perhaps in many cases, is that it is difficult to ascertain whether the attorney is seeking the testimony solely (or primarily) for an improper purpose, or to know for certain what the attorney's strategy is with regard to the testimony being sought.

The BAP in Miller also noted that the interpretation of § 362(a) which would not allow a debtor to ever be called as a witness without relief from stay would be "inconsistent with

interpretations of a similar clause contained in section 524." Id. at 506. Section 524 states that a debtor's discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor[.]" The panel elaborated that "courts have held that the discharge injunction does not shield a debtor from testifying in an action against his insurer where the recovery against him personally is enjoined." Id. (discussing Patronite v. Beeney (In re Beeney), 142 B.R. 360, 363 (B.A.P. 9th Cir. 1992) ("allowing [the plaintiff's] suit to proceed merely leaves [the debtor] in the position of a witness who would appear at trial"), and In re Traylor, 94 B.R. 292, 293 (Bankr. E.D.N.Y. 1989) ("the debtor, whether discharged or not, is under the same obligations as would be any witness, regardless of the inconvenience to him, to attend any trial that may take place if the relief is granted")). Presumably, the discharge injunction leads to this result because a debtor who received a discharge would be free from liability.[15]

At the December 13, 2012 hearing, Mr. Kenoyer's counsel, Ms. Diemer, argued that the Court should not follow Miller, because in Miller the risk was to the debtor's husband -- a non-filer who did not benefit from the stay -- whereas when there is an intertwined issue and the harm goes to the debtor himself, there is a violation of the stay. Ms. Diemer argued that in Miller, there was never any actual risk to the debtor, but in Mr. Kenoyer's case, particularly

[15] However, it is arguable that a discharged debtor also should not be saddled with the associated risks or costs of providing such testimony (e.g., needing to hire an attorney to represent the discharged debtor's interests).

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

because of the non-dischargeability action which followed, there was a risk to Mr. Kenoyer.

This argument is somewhat compelling, at least as a policy matter. If the continued prosecution of Ms. Cardinale's state court case against the non-debtor defendants was solely or primarily for purposes of building a case against Mr. Kenoyer for later trial, then it would at least be arguable that there was a continuation of proceedings against Mr. Kenoyer, despite his severance. However, Mr. Kenoyer has presented no evidence that Ms. Cardinale lacked any independent justification for proceeding against the non-debtor defendants after the severance of claims against Mr. Kenoyer. For instance, Mr. Kenoyer has offered no evidence that the defendants against whom a judgment was obtained -- Daniel R. Miller, Sr., Keith Charles Knapp, or Home Loan Services Corporation dba California Home Loans -- lacked the money to pay a potential judgment, or that such defendants were in any way insignificant. The jury's substantial verdict of more than $3 million against the non-debtor defendants also indicates that the non-debtor defendants were not mere, minor players, and that the trial did not proceed for the sole purpose of building a case against Mr. Kenoyer.

In addition, the Court reads Miller differently than Ms. Diemer. Both Miller and the state court case from which Mr. Kenoyer was severed involved state fraud actions initially naming debtors as defendants and then staying the actions against the debtors to allow for pursuit of the claims against non-debtor parties. The risk that evidence would be offered against the non-debtor parties that could later implicate the debtor in separate

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

litigation was not only real, but was expressly addressed and approved by the BAP. Additionally, while it appears that a nondischargeability action was never filed in the Miller debtor's underlying Chapter 13 case, the potential threat for a creditor to file such an action existed.

At least two rules can be derived from Miller. First, it does not violate the automatic stay for a debtor to be compelled to testify in a proceeding against a non-debtor when the debtor has been severed from the proceeding and the purpose of eliciting the testimony is to prosecute a claim against the non-debtor. Second, such testimony is permitted even if the elicited information could later be used against the debtor -- as long as the debtor is compelled to testify for purposes other than prosecuting claims against the debtor.

**Other Cases**

Other courts have reached conclusions similar to those of the BAP in Miller. In the case of In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation, 140 B.R. 969 (N. D. Ill. 1992) (Mahurkar), which the Miller court discussed, the district court concluded that the automatic stay did not protect the debtor, which was a company and a defendant in a multi-defendant patent infringement case, from responding as a non-party to discovery requests calculated to lead to admissible evidence against another defendant. Id. at 977. The automatic stay also did not prevent the debtor's former and current employees from being deposed about information bearing on the litigation against another defendant but not the debtor. Id. at 978-79. In fact, the court ordered that "[d]iscovery and all other proceedings shall continue in the

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

litigation among [the non-debtor parties] as if [the debtor] were an interested non-litigant," but all "discovery and other proceedings against [the debtor] and its experts are stayed until the lifting or modification of the automatic stay." Id. However, the Mahurkar court came to the conclusion that the debtor must participate in the proceedings as a non-party but not as a party because the debtor's counsel had "conceded that the automatic stay does not affect discovery regarding [the other defendant], and that [the debtor] is obliged to participate to the extent it would be as a non-party." Id. at 977. The court stated that it believed that the debtor's concession "correctly states the law (although there are no cases on point)." Id.

A similar result was reached in the case of In re Hillsborough Holdings Corp., 130 B.R. 603, 605 (Bankr. M. D. Fla. 1991), also discussed by Miller. In Hillsborough, the court concluded that a co-defendant of the debtor could depose the employees of the debtor so that the co-defendant could discover facts that would aid its defense against the plaintiff. The Hillsborough court explained:

> At first blush, it would appear that the proposed action by American Pipe, that is to conduct discovery in order to prepare its defense against the suit filed by the City, is not prohibited by the automatic stay. This is so because there is no question that American Pipe does not seek relief from the automatic stay in order to undertake any action against U.S. Pipe or against any property of U.S. Pipe in order to enforce a pre-petition claim against U.S. Pipe, which action would clearly be within the specific provisions of § 362(a) of the Bankruptcy Code. Based on the undisputed facts, it is clear that a literal reading of § 362(a) leaves no doubt that the automatic stay would not prevent American Pipe from conducting the proposed discovery to be used for its defense in the suit filed by the City.

Id. However, the Hillsborough court, "assuming but not conceding"

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

that the automatic stay was broader than the court believed it to be, granted relief from the automatic stay to allow the co-defendant to proceed with the discovery. Id. at 606. Specifically, the court ordered "that in the event the automatic stay applies, the same is modified to authorize [the co-defendant] to proceed with its plan of discovery with a provision that any material obtained through discovery is not to be binding on [the debtor] in any proceeding involving the liquidation or estimation of a claim against [the debtor]." Id. at 607. The court also noted that the debtor could pursue an injunction under § 105 "if discovery would seriously impact its ability to proceed to rehabilitate under Chapter 11." Id.

The case of In re Richard B. Vance & Co., 289 B.R. 692, 697 (Bankr. C. D. Ill. 2003) -- decided after Miller -- observed that although "there are valid arguments to the contrary, it is now generally accepted that discovery pertaining to claims against the bankrupt's codefendants is not stayed, even if the discovery requires a response from the debtor, and even if the information discovered could later be used against the debtor." The Vance court cited Miller, Mahurkar, and Hillsborough for this proposition but did not elaborate on any of the "valid arguments to the contrary." The Richard B. Vance court did cite to Burdett v. Manown (In re Manown), 213 B.R. 411 (Bankr. N.D. Ga. 1997), for the contrary position; however, Manown is a decision with little factual discussion that appears to have dealt with the situation where a plaintiff was seeking relief from the automatic stay to prosecute an action against the debtor, and thus the discovery sought was aimed at building a case against the debtor and not

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

against a non-debtor co-defendant. Manown, 213 B.R. at 412 (stating that "[w]ithout a clear understanding of the interrelationship of the state court proceeding with Debtor's bankruptcy case, this court cannot determine the merits of Movant's motion for relief from the automatic stay"). Therefore, the possible applicability of Manown to the situation at hand is unclear.

Defendants have brought to the Court's attention three recent decisions that have followed Miller. In United Nat. Funding, LLC v. JetDirect Aviation, Inc., 2:08-CV-00993-JCM, 2012 WL 2514929, slip op. at 4 (D. Nev. Jun. 28, 2012), the district court concluded that "the automatic stay does not protect [the debtor] from complying with discovery requests in a multi-defendant action where the debtor . . . is a Defendant, but where the requests for discovery pertain to the claims against the other non-debtor Defendants." Id. (citing Miller, 262 B.R. at 504).

Defendants also cite to Green v. Brotman Med. Ctr., Inc. (In re Brotman Med. Ctr., Inc.), BAP.CC-08-1056-DKMO, 2008 WL 8444797, at *7 (B.A.P. 9th Cir. Aug. 15, 2008), which has been designated "not for publication," and is thus not precedential under Fed. R. App. P. 36-3(a), but citation of unpublished cases is permitted by Fed. R. App. R. 32.1. In Brotman, the BAP, citing to Miller, affirmed the bankruptcy court's denial of the plaintiff's motion for relief from stay to pursue claims against the debtor, in part because the plaintiff was allowed to obtain third-party discovery from the debtor, which the plaintiff could then use against the co-defendants. Id.

In Yates v. Delano Retail Partners, LLC, No. C 10-3073 CW,

2012 WL 1094444, slip op. at 1 (N. D. Cal. Mar. 29, 2012), also cited by Defendant, the co-defendant moved to stay the plaintiff's entire case because of the debtor-defendant's bankruptcy filing. The co-defendant argued, among other things, that the case should be stayed because discovery could not be obtained from the debtor. Yates, 2012 WL 1094444, slip op. at 3. The Yates court rejected that argument, stating that "discovery can proceed against a bankrupt defendant to same extent as it can against any other non-party." Id. (citing Miller, 262 B.R. at 504-05).

In support of its conclusion, the Yates court also cited the unpublished decision of Lewis v. Russell, CIV.S-03-2646 WBSKJM, 2009 WL 1260290 (E. D. Cal. May 7, 2009). Yates, 2012 WL 1094444, slip op. at 3. Mr. Kenoyer cites Lewis to support his contention that Defendants' actions violated the stay. However, Lewis involved the recovery of environmental response costs under The Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA). Thus, the claims asserted by the plaintiffs against the debtors/defendants could not meaningfully be severed from the plaintiffs' claims against the other defendants, or from the cross-claims and counter-claims asserted by the debtors, because the trier of fact was required to allocate responsibility among all potentially liable parties in the district court litigation. See 42 U.S.C. § 9613(f). The claims, crossclaims, counterclaims, and third party claims for cost recovery and contribution under CERCLA made up the heart of the district court litigation. Therefore, resolution of the debtors' non-CERCLA offensive claims and the non-bankrupt parties' claims against each other depended on the district court's equitable allocation of response costs among all

the liable parties, including debtors. Severance of the debtor in
Lewis simply was not an option.

Importantly, the Lewis court, relying on Miller, noted that
"[i]n general, parties may seek discovery from a debtor on matters
related to claims against non-debtor parties." Id. at 3. In this
instance, though, the interrelated nature of the claims led the
Lewis court to determine that nothing could move forward, not even
discovery from the non-debtor parties, because of the eventuality
that the liability of the debtors would be determined in violation
of the automatic stay. Id. at *4. Thus, the Lewis court stayed
the entire action until the debtors' bankruptcy case was terminated
or until relief from the automatic stay was obtained. Id. at *5.
Therefore, Lewis stands for the proposition that discovery aimed at
pursuing a co-defendant generally can be propounded on a debtor,
unless the nature of the suit mandates allocation of liability
among the co-defendants and debtor, in which event the entire case
must be stayed.

Therefore, Lewis is distinguishable from the instant case. In
Lewis, the polluters were facing the court's allocation of strict
liability for violating CERCLA, whereas in the instant case, the
underlying state court fraud action involved a claim where joint
and several liability could be assigned, and the jury was able to
determine the liability of Mr. Kenoyer's co-defendants without
regard to Mr. Kenoyer's liability. Thus, Lewis does not support
Mr. Kenoyer's position, but instead supports the Defendants'
position.

In support of his contention that enforcement of the Subpoena
violated the automatic stay, Mr. Kenoyer also relies upon two

additional cases. In the first case, Sternberg v. Johnston, 595 F.3d 937, 944-45 (9th Cir. 2010), the Court of Appeals concluded that an attorney violated the automatic stay by defending a state court order of sanctions against the debtor, when the debtor petitioned the state appellate court to vacate the stay. The court determined that the attorney's conduct violated the automatic stay, because the attorney did not alert "the appellate court to the obvious conflicts between the order and the stay." However, Sternberg is not on point, because no sanctions were sought against Mr. Kenoyer in violation of the stay, and there have been no efforts to collect -- monetarily -- from Mr. Kenoyer in violation of the automatic stay.

Mr. Kenoyer also relies upon Bihari v. DDJ Capital Mgmt., LLC, 306 B.R. 336 (E. D. Cal. 2004), but Bihari does not elucidate the issue at hand. In Bihari the plaintiff filed a case against the defendant for compensation for overtime, but the defendant, an LLC, filed for bankruptcy and the case was stayed, so the plaintiff then filed a second, separate lawsuit against the shareholders, officers, and directors of debtor for compensation for overtime. Id. at 337. The court found that "[r]eview of the complaints evidences that Plaintiff's filing of the Second Action Complaint is an attempt to avoid the stay issued in the first action." Id. at 338. The court explained that "[b]ecause 'there is such identity between the debtor and [Defendants] that the debtor may be said to be the real party defendant and that a judgment against [Defendants] will in effect be a judgment or finding against the debtor,' Plaintiff's filing of the Second Action Complaint violated the stay of the first action." Id. at 338 (quoting A.H. Robins

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.), 788 F.2d 994, 999 (4th Cir. 1986)).

In citing Bihari, it appears that Mr. Kenoyer counsel may be trying to apply the "unusual circumstances" doctrine adopted in other circuits which:

> arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case.

A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986). However, the unusual circumstances doctrine typically is not used to extend the automatic stay to actions against non-debtors under § 362, but instead is used to obtain an injunction under § 105. See Chugach Timber Corp. v. Northern Stevedoring & Handling Corp. (In re Chugach Forest Products, Inc.), 23 F.3d 241, 247 n.7 (9th Cir. 1994). In Chugach Forest Products, Inc., the Ninth Circuit declined to extend the stay under the unusual circumstances doctrine, noting that the "typical 'unusual circumstances' cases" involved prospective requests for an injunction. Id. (citing Patton v. Bearden, 8 F.3d 343 (6th Cir. 1993)). Similarly, in Patton, 8 F.3d at 349, the Sixth Circuit stated that "extensions" under the "unusual circumstances" doctrine, "although referred to as extensions of the automatic stay, were in fact injunctions issued by the bankruptcy court after hearing and the establishment of unusual need to take this action

to protect the administration of the bankruptcy estate[.]".[16]

Nevertheless, even if the "unusual circumstances" doctrine could apply, the Bihari case is distinguishable. Ms. Cardinale did not file a second case against new defendants to avoid the stay in Mr. Kenoyer's bankruptcy case. More importantly, Mr. Kenoyer has not alleged that continuation of Ms. Cardinale's state court case against Mr. Kenoyer's co-defendants violated the automatic stay, or that Mr. Kenoyer and his co-defendants shared such an "identity" that a judgment against the co-defendants would serve as a judgment against Mr. Kenoyer.[17] Quite to the contrary: Mr. Kenoyer is not bound by the jury's verdict against the non-debtor defendants.

Interestingly, the Court's own research shows that while § 362(a) is not violated by pursuing discovery as to non-debtor defendants, it is appropriate for a debtor to seek injunctive relief under 11 U.S.C. § 105 to prevent the pursuit of such discovery from the debtors and any harm to such debtors. See Lane v. Philadelphia Newspapers, LLC (In re Philadelphia Newspapers, LLC), 423 B.R. 98 (E. D. Pa. 2010) (upholding the bankruptcy court's extension of the automatic stay to the debtor's employee and injunction under § 105(a) against pursuit of discovery from the debtor's employee); In re Residential Capital, LLC, 480 B.R. 529,

---

[16] The BAP recently stated in an unpublished decision that "any extension of the automatic stay to nondebtors does not occur automatically but requires the filing of an adversary proceeding requesting the bankruptcy court to act under § 105(a)." In re Ripon Self Storage, LLC, Slip Op., Case No. 2011 WL 3300087, *6 (B.A.P. 9th Cir. 2011) (citing Boucher v. Shaw, 572 F .3d at 1093 n. 3).

[17] To the Court's knowledge, none of the non-debtor defendants have sought indemnity from Debtor, and since Debtor has already received his discharge, any of those potential unfiled claims may also have been discharged.

536-37 (Bankr. S. D. N. Y. 2012) ("There is surprisingly little authority whether the automatic stay applies to discovery from a debtor in a third-party action in which the debtor is not a party. . . . The Court accepts [the plaintiff's] argument that section 362(a) does not, standing alone, protect the Debtors from discovery in third-party actions [against the debtors' affiliates]. . . . [But] the Court is extending the protection of the stay pursuant to section 105(a) to anyone seeking discovery from the Debtors absent further order of the Court."); see also Miller, 262 B.R. at 506-07 (discussing Occidental Chemical Corp. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 41 B.R. 926 (S.D.N.Y. 1984), and noting that in Johns-Manville a stay had been granted under § 105 because § 362 did not prevent the discovery sought from the debtor) ("Johns-Manville does not stand for the proposition that the automatic stay prevents discovery of a debtor in furtherance of a claim against a non-debtor[.]").

Thus, consistent with Miller, the generally accepted view is that § 362(a) does not prevent third-party discovery from a debtor which is directed to the claims asserted against non-debtor parties. However, the bankruptcy court has the power under § 105(a) to prevent such discovery, when such relief is affirmatively requested. This logic certainly applies also to trial subpoenas, i.e., if § 362(a) does not prevent enforcement of a trial subpoena served on a debtor but directed at claims against non-debtors, then the bankruptcy court has the same power under § 105(a) to enjoin such testimony.

**Validity of the Subpoena**

The BAP's decision in Miller and the weight of authority from other courts suggest that it does not violate the automatic stay to require a debtor to comply with a subpoena for which the purpose is to prosecute claims against non-debtors. Such cases also suggest that the default approach should be to require a debtor to seek an injunction to halt enforcement of a subpoena. As discussed above, this Court has reservations about whether such a subpoena would never violate the automatic stay, particularly given the policies underlying the stay. However, under the undisputed facts of this particular case, the Court concludes that reasoning in Miller, Mahurkar, Hillsborough, Richard B. Vance, United Nat. Funding, LLC, and Yates should apply.

The Subpoena served on Mr. Kenoyer was valid pre-petition, at the time when the Subpoena was served. However, upon Mr. Kenoyer's filing for bankruptcy protection, the original Subpoena -- left unaltered -- would have led to a stay violation. This is because the Subpoena sought production of various documents pertaining to Mr. Kenoyer's liability on the claims asserted against Mr. Kenoyer in the state court.

However, the Subpoena was narrowed in two ways. First, after receiving notice of Mr. Kenoyer's bankruptcy case, Ms. Caron informed Ms. Diemer by letter that it was Ms. Caron's intention, consistent with Miller, to have Mr. Kenoyer testify against the non-debtor co-defendants in the state court trial. The April 16 Letter makes it clear that Ms. Caron did not intend to pursue the claims against Mr. Kenoyer in the state court proceeding; to the contrary, Ms. Caron filed a motion on behalf of Ms. Cardinale to

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

sever Mr. Kenoyer from the case. The April 16 Letter characterized Mr. Kenoyer as an "indispensable witness" against the remaining defendants. Under Miller, it was not a violation of the stay for Ms. Caron to call Mr. Kenoyer as a witness against the remaining, non-debtor defendants, and to ask questions pertaining to the liability of the non-debtor defendants. In fact, under Miller, 262 B.R. at 505, it would not have been a stay violation to elicit evidence from Mr. Kenoyer which might have been harmful to him in a subsequent proceeding, as long as the purpose of eliciting the evidence was to build a case against the non-debtor defendants, without prejudice to Mr. Kenoyer's right to seek a § 105 injunction. Also, as discussed above, Mr. Kenoyer has offered no evidence to suggest that the sole or even the primary purpose of prosecuting the action against the non-debtor defendants was to obtain information to be used against Mr. Kenoyer in a later trial. Quite to the contrary, the undisputed facts show that the state court verdict of more than $3 million obtained against the non-debtors was potentially lucrative to Ms. Cardinale without respect to any potential liability on the part of Mr. Kenoyer.

The second narrowing of the Subpoena was even more dramatic; Mr. Kenoyer was never called to testify. Thus, Ms. Caron never asked any questions of Mr. Kenoyer, nor required Mr. Kenoyer to produce any documents, which could have implicated Mr. Kenoyer in any way. The decision in Miller hints that if Mr. Kenoyer had been called to testify solely for purposes of obtaining information to be used against Mr. Kenoyer in a later proceeding, this would have been improper. However, because Mr. Kenoyer was never called to testify, no improper questions were ever asked.

Therefore, Ms. Caron's insistence that Mr. Kenoyer comply with the Subpoena in the action against the non-debtor defendants did not violate the automatic stay. Defendants are entitled to summary judgment on Mr. Kenoyer's claim that Defendants violated § 362(a)(1).

**B. <u>Alleged Violation of § 362(a)(6)</u>**

Mr. Kenoyer also contends that Defendants violated § 362(a)(6), because Mr. Kenoyer's alleged involvement in the tortious conduct was discussed during the state court trial. Relying upon <u>Lewis</u>, <u>supra</u>, Mr. Kenoyer argues that although Defendants did not call Mr. Kenoyer to testify at the state court trial, Defendants nonetheless violated the automatic stay by eliciting information from state court witnesses about Mr. Kenoyer during the trial and by then using that information against Mr. Kenoyer in Ms. Cardinale's non-dischargeability complaint against Mr. Kenoyer.[18] The Court rejects these contentions for several reasons.

Put simply, there was no "act to collect, assess, or recover a claim" against Mr. Kenoyer in the state court action. <u>See</u> 11 U.S.C. § 326(a)(6). Mr. Kenoyer was severed from the state court trial and was not bound by the jury's verdict against the non-debtor defendants. The fact that other witnesses may have mentioned Mr. Kenoyer at the trial or his involvement in the alleged conspiracy did not violate the stay. Mr. Kenoyer's conduct

---

[18] At the December 13, 2012 hearing, Ms. Diemer argued that the later nondischargeability action brought against Mr. Kenoyer supports the interrelated nature of the claims likening the present case to <u>Lewis</u>.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

was relevant to the claims against the alleged co-conspirators, and absent an injunction from this Court, could be the subject of inquiry -- not just an inquiry of the witnesses who actually testified, but also of Mr. Kenoyer, had he been called to the stand.

Significantly, none of the jury's findings can be given preclusive effect against Mr. Kenoyer, because Mr. Kenoyer was not a party when the case went to trial. Because the underlying verdict comes from state court, California law governs whether there can be issue preclusion. Robi v. Five Platters, Inc., 838 F.2d 318, 322 (9th Cir. 1988). Under California law, "[a] party is collaterally estopped from relitigating an issue previously adjudicated if: (1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; (2) there was a final judgment on the merits of the previous suit; and (3) the party against whom the estoppel is asserted was a party, or in privity with a party, to the previous suit." In re Russell, 76 F.3d 242, 244-45 (9th Cir. 1996). A person is in privity when that person is "so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." In re Hansen, 368 B.R. 868, 879 (B.A.P. 9th Cir. 2007) (quoting Headwaters Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1052-53 (9th Cir. 2005)). Even if the requirements for issue preclusion are satisfied, a court should not apply the doctrine unless it would comport with fairness and public policy. See Smith v. Exxon Mobil Oil Corp., 153 Cal. App. 4th 1407, 1414 (2007) (discussing the equitable nature of collateral estoppel). Because the case against Mr. Kenoyer was severed due to

the automatic stay, and his rights, even as an alleged employee of the state court defendants, are not the same as those parties, the Court will not treat Mr. Kenoyer as being in privity with any defendant in the state court action for the purposes of issue preclusion.

The use of information from the state court trial to support a summary judgment brief in a non-dischargeability action was not improper. As discussed above, the BAP in Miller, 262 B.R. at 505, expressly contemplated that information obtained from a debtor and used against a non-debtor defendant might be used against the debtor in a later proceeding. The information, itself, is not off limits. Moreover, the trial testimony used to support the non-dischargeability action was not obtained from Mr. Kenoyer.

As for Mr. Kenoyer's reliance on Lewis, the Court has already explained why Lewis is not applicable. The unique way in which damages are determined under CERCLA, and the ancillary claims that arose in Lewis, made severance of those debtors impossible. By contrast, in the case against Mr. Kenoyer's former co-defendants, the jury was able to return a verdict that did not address Mr. Kenoyer's liability. Additionally, Mr. Kenoyer's argument assumes, incorrectly, that Mr. Kenoyer could not have been called as a witness at trial. Logically, because Mr. Kenoyer could have been called to testify against the non-debtor defendants, Mr. Kenoyer could also have been compelled to testify about his own actions to the extent necessary to establish the liability of the remaining defendants.

Therefore, Defendants are entitled to summary judgment on Mr. Kenoyer's claim that Defendants violated § 362(a)(6).

### C. Request for an Injunction

Although the Court has concluded that it was permissible, under Miller and other persuasive cases, to subpoena Mr. Kenoyer to testify, there is a separate request by Mr. Kenoyer for an injunction to prevent Defendants from enforcing the Subpoena. This Court does have the authority to enjoin testimony under 11 U.S.C. § 105(a). However, the request for injunctive relief is now moot. The state court action has concluded and Mr. Kenoyer was not asked to testify or produce documents during trial.

## V. Conclusion

Based upon the undisputed facts, the Court concludes that under Miller, its predecessors, and its progeny, the Defendants did not violate the automatic stay by attempting to enforce the Subpoena, nor by eliciting testimony or offering evidence about Mr. Kenoyer's conduct during the state court trial. Therefore, Defendants are entitled to a judgment as a matter of law in their favor as to the first and third causes of action in the Amended Complaint. Furthermore, because the state court trial has been completed, Mr. Kenoyer's second cause of action seeking an injunction prohibiting Defendants from enforcing the Subpoena is moot. Therefore, Defendants' motion for summary judgment is granted. Counsel for Defendants shall prepare a form of judgment.

**IT IS SO ORDERED.**

Dated: 3/20/13

ARTHUR S. WEISSBRODT
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Court Service List

Derald R. Kenoyer
100 Palm Valley Blvd.
San Jose, CA 95123

Kathryn S. Diemer
Diemer, Whitman and Cardosi
75 E. Santa Clara Street
San Jose, CA 95113

Noreen Cardinale
Caron & Associates
3922 Harrison Street
Oakland, CA 94611

Martha L. Caron
3922 Harrison Street
Caron & Associates
Oakland, CA 94611

Mary Margaret Bush
Bronson, Bronson & McKinnon
100 B St.
Santa Rosa, CA 95401

Stephen D. Finestone
Law Offices of Stephen D. Finestone
456 Montgomery St. 20th Fl.
San Francisco, CA 94104